# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

In re:

**RONNIE LOUIS MARVEL KAHAPEA,**

**Debtor-in-Possession**,

**Case No.: 24-01025**
**Chapter 13**

---

# DEBTOR-IN-POSSESSION'S PETITION FOR WITHDRAWAL FROM AUTOMATIC REFERRAL AND NOTICE OF REMOVAL TO ARTICLE III COURT

---

**Cover sheet**

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

In re:

RONNIE LOUIS MARVEL KAHAPEA,

Debtor-in-Possession,


Case No.: 24-01025

Chapter 13

---

# DEBTOR-IN-POSSESSION'S PETITION FOR WITHDRAWAL FROM AUTOMATIC REFERRAL AND NOTICE OF REMOVAL TO ARTICLE III COURT

---

pg. 1

## TABLE OF CONTENTS

1.  **Introduction**

2.  **Challenge of Jurisdiction**

3.  **Jurisdictional Statement**

4.  **Statement of Facts**

5.  **Historical Background of the Borrower-in-Custody Program**

6.  **Legal Argument and Basis for Relief**

    o   A. Violation of Agency Law

    o   B. Unconscionability of Contractual Clauses

    o   C. Constitutional Violations (Due Process & Takings Clause)

    o   D. Tax Violations & Unjust Enrichment

7.  **THE DEPOSITORY INSTITUTION CANNOT PLEDGE COLLATERAL AND THEN FORECLOSE ON OTHER COLLATERAL**

8.  **Affirmative Relief Requested**

9.  **Withdrawal from the Automatic Referral**

10. **Notice of Removal to the United States District Court**

11. **Conclusion & Prayer for Relief**

## TABLE OF AUTHORITIES

### United States Constitutional Provisions

1.  **U.S. Const. art. III, § 1** – Judicial power vested in Article III courts

2.  **U.S. Const. amend. V** – Due Process Clause, Takings Clause

3.  **U.S. Const. amend. VII** – Right to trial by jury in controversies exceeding $20

4.  **U.S. Const. amend. IX** – Protection of unenumerated rights

5.  **U.S. Const. amend. X** – Reservation of powers to the states and the people

6.  **U.S. Const. amend. XIV, § 1** – Due Process and Equal Protection Clauses

### United States Supreme Court Cases

7.  **Stern v. Marshall, 564 U.S. 462 (2011)** – Non-core matters requiring Article III adjudication

8. **Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982)** – Bankruptcy courts lack Article III jurisdiction over private right disputes

9. **Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989)** – Right to jury trial in fraudulent transfer cases

10. **Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)** – Due process requires notice and an opportunity to be heard before property deprivation

11. **Fuentes v. Shevin, 407 U.S. 67 (1972)** – Notice and hearing required before property seizure

12. **Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935)** – Mortgage foreclosure must adhere to constitutional protections

13. **Perry v. United States, 294 U.S. 330 (1935)** – Government-backed financial obligations must be honored

14. **Butcher's Union Co. v. Crescent City Co., 111 U.S. 746 (1884)** – Contracts violating public policy are unenforceable

## Federal Circuit and Appellate Cases

15. **In re City of Detroit, 838 F.3d 792 (6th Cir. 2016)** – Bankruptcy and constitutional considerations in municipal financial agreements

16. **In re Bellingham Ins. Agency, Inc., 702 F.3d 553 (9th Cir. 2012)** – Bankruptcy court power limitations under Stern v. Marshall

17. **In re Gifford, 688 F.3d 846 (7th Cir. 2012)** – Fraudulent misrepresentation in financial instruments

18. **Wheeling Steel Corp. v. Glander, 337 U.S. 562 (1949)** – Taxable interest on financial instruments

19. **McCulloch v. Maryland, 17 U.S. 316 (1819)** – Bank taxation under constitutional framework

20. **Tyler v. Hennepin County, 598 U.S. 66 (2023)** – Unlawful taking of excess property value

## Banking and Financial Law Cases

21. **Yellen v. Confederated Tribes of Chehalis, 594 U.S. 624 (2021)** – Federal control over financial distributions

22. **First Nat'l Bank v. Anderson, 269 U.S. 341 (1926)** – Commercial banks' obligations under federal law

23. **Marquette Nat'l Bank v. First of Omaha Serv. Corp., 439 U.S. 299 (1978)** – Banking regulations and interstate financial contracts

24. **Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333 (1977)** – Unlawful financial practices impacting trade

25. **United States v. Doe, 465 U.S. 605 (1984)** – Custodial duty and unauthorized third-party control over assets

## Agency Law and Contract Cases

26. **Jensen v. Eck, 147 F.3d 602 (7th Cir. 1998)** – Agency law requiring clear principal-agent distinctions

27. **Bank of Am. v. Moglia, 330 F.3d 942 (7th Cir. 2003)** – Misuse of financial agency authority

28. **Chiarella v. United States, 445 U.S. 222 (1980)** – Financial fraud via undisclosed transactions

29. **Reves v. Ernst & Young, 494 U.S. 56 (1990)** – Misrepresentation in securities transactions

30. **Santa Fe Indus. v. Green, 430 U.S. 462 (1977)** – Fraudulent financial practices within agency relationships

## Racketeering and Unjust Enrichment Cases

31. **Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)** – RICO liability for financial institutions

32. **Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)** – Civil RICO fraud considerations

33. **United States v. Turkette, 452 U.S. 576 (1981)** – Racketeering applied to financial institutions

34. **Kaiser Aetna v. United States, 444 U.S. 164 (1979)** – Government seizure without just compensation violates the Takings Clause

35. **Scheuer v. Rhodes, 416 U.S. 232 (1974)** – Government actors are not immune from due process claims


## INTRODUCTION

This Petition seeks to challenge the **constitutionality** of certain agreements entered into by the **Debtor-in-Possession** and the **depository institution** under the **Borrower-in-Custody (BIC) Program** as facilitated by the **Federal Reserve**. The **Debtor-in-Possession** asserts that the **contractual terms** and **practices** employed by the **depository institution** have led to **violations of constitutional rights** under **due process** protections and have resulted in **unjust enrichment** contrary to public policy and law.

In this context, the **Debtor-in-Possession** is challenging the **non-core jurisdiction** of the **Bankruptcy Court** over matters involving **private property rights** and **constitutional violations** arising from the conduct of the **depository institution**. Specifically, this petition asserts that the **BIC program** and its

associated **collateralization practices** have been utilized in a manner that **circumvents constitutional safeguards**, particularly regarding **due process** under the **Fifth and Fourteenth Amendments**.

The **Debtor-in-Possession** seeks **relief from the automatic referral** to the Bankruptcy Court, arguing that the disputes arising under the **BIC program** fall under the **jurisdiction of an Article III court**, which possesses the necessary **constitutional authority** to adjudicate matters concerning **property rights**, **fraudulent misrepresentation**, and **unjust enrichment**. By challenging the **automatic referral**, the **Debtor-in-Possession** aims to ensure that these **core constitutional issues** are addressed before a **constitutionally empowered tribunal**.

The **Debtor-in-Possession** further seeks to remove these proceedings to the **District Court**, where **Article III courts** are **constitutionally mandated** to hear disputes involving **private rights** and **constitutional claims**. The **Debtor-in-Possession** respectfully asserts that the **Bankruptcy Court** lacks the requisite jurisdiction to adjudicate these matters, which should be handled in the context of **constitutional due process** protections.

**Case Citations:**

- **Stern v. Marshall, 564 U.S. 462 (2011)** – The Bankruptcy Court lacks jurisdiction over non-core matters.

- **Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982)** – Bankruptcy courts cannot adjudicate non-core matters without violating Article III.

## CHALLENGE OF JURISDICTION

The **Debtor-in-Possession** challenges the **jurisdiction** of the **Bankruptcy Court** over the present matter, as the claims in this petition involve **private rights**, **property interests**, and **constitutional violations**, all

of which require adjudication by an **Article III court**. The **Bankruptcy Court**, as an **Article I tribunal**, lacks the **judicial power** necessary to resolve disputes concerning **substantive constitutional questions**, particularly where **property rights and due process protections** are implicated. Under **Stern v. Marshall, 564 U.S. 462 (2011), non-core matters** must be decided by an **Article III judge**, as Congress lacks the authority to confer **final adjudicative power** on a non-Article III tribunal when a party has not **consented** to such jurisdiction.

The **automatic referral** of this case to the **Bankruptcy Court** is improper, as the **Debtor-in-Possession** has **raised constitutional claims** regarding the **Borrower-in-Custody (BIC) Program**, which has resulted in the **deprivation of property rights** through improper **collateral pledging**, **unjust enrichment**, and **violations of agency law**. These are **not mere contractual matters**, but instead involve **substantive constitutional concerns** requiring full **judicial review** before an **Article III court**. Pursuant to **28 U.S.C. § 157(d)**, a **district court must withdraw** any proceeding requiring the interpretation of **federal constitutional provisions** or raising **substantial public policy concerns**.

Furthermore, the **Debtor-in-Possession** asserts that the **BIC agreement** between the parties has created a **fiduciary relationship**, wherein the **depository institution has assumed dual roles of agent and principal**, creating an **inherent conflict of interest** and **violating fundamental principles of agency law**. The **Bankruptcy Court** lacks jurisdiction to resolve such issues, which must instead be **litigated in an Article III court** under the proper **constitutional framework**. To allow an **Article I tribunal** to decide these claims would amount to a **violation of due process** and would constitute an **unconstitutional delegation of judicial power**.

Accordingly, the **Debtor-in-Possession** moves for an **immediate withdrawal** from the **Bankruptcy Court's jurisdiction** and requests that these proceedings be **transferred to the United States District Court**, where they may be adjudicated by a **constitutionally authorized tribunal**. The **Bankruptcy**

**Court lacks jurisdiction** over claims involving **property rights**, **unjust enrichment**, and **constitutional violations**, as these issues fall **squarely within the exclusive purview of Article III courts**.

**Case Citations:**

- **Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989)** – Right to jury trial in fraudulent transfer cases before an Article III court.

- **Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665 (2015)** – A party must **expressly consent** to bankruptcy court jurisdiction over **non-core matters**.

## JURISDICTIONAL STATEMENT

This **Petition for Withdrawal from Automatic Referral and Notice of Removal** is brought pursuant to **28 U.S.C. § 157(d)**, which mandates the withdrawal of a proceeding from the **Bankruptcy Court** where it requires the **interpretation of federal constitutional law** or involves **substantial public policy concerns**. The **Debtor-in-Possession** asserts that this matter falls squarely within the jurisdiction of an **Article III court**, as it involves **constitutional violations**, **property rights**, and **substantive federal law** concerning the **Borrower-in-Custody (BIC) Program**, the **Federal Reserve Operating Circular No. 10**, and **Federal Reserve Operating Circular No. 7**.

The **Bankruptcy Court** is an **Article I tribunal**, meaning it lacks the **judicial authority** to adjudicate **private rights disputes** involving **fundamental constitutional protections**. Under **Stern v. Marshall, 564 U.S. 462 (2011)**, non-core matters that implicate **property rights** or **constitutional due process** must be **adjudicated by an Article III court**, as **Congress lacks the authority** to confer such **final adjudicative power** upon a **non-Article III tribunal**. Accordingly, **jurisdiction is proper in the United States District Court**, where the **Debtor-in-Possession** is entitled to **full judicial review and due process protections**.

Moreover, **jurisdiction is further established** under **28 U.S.C. § 1331**, as this case presents **substantial federal questions** relating to the **Federal Reserve's statutory authority**, the **Tax Code violations arising from unjust enrichment**, and the **improper pledging and trading of collateral in excess of its intended value**. The **Debtor-in-Possession** asserts that the **depository institution**, acting under the **BIC program**, has committed **multiple violations** of federal law, including but not limited to: (1) **unjust enrichment** through **excess collateral pledging**, (2) **unauthorized trading of securitized instruments** derived from the borrower's collateral, and (3) **tax fraud through the failure to properly report capital gains from fractional reserve banking transactions**. These claims fall **outside the limited jurisdiction** of the **Bankruptcy Court** and require **adjudication in an Article III forum**.

Additionally, the **Seventh Amendment** guarantees the **Debtor-in-Possession's right to a jury trial** in cases where the **controversy exceeds $20** and involves **common law property disputes**. The **Bankruptcy Court lacks the authority** to conduct a **jury trial** absent the **Debtor-in-Possession's express consent**, which has not been given in this case. Under **Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989)**, a party who has not **expressly consented** to the **Bankruptcy Court's jurisdiction** is entitled to **litigate their claims before an Article III judge**, particularly where **private rights** and **constitutional protections** are at stake.

For these reasons, the **Debtor-in-Possession respectfully asserts** that jurisdiction lies **exclusively** within the **United States District Court** and that all matters arising from this dispute should be **immediately withdrawn from the Bankruptcy Court's jurisdiction** and adjudicated before an **Article III court**. The **Debtor-in-Possession further invokes its constitutional right to due process**, asserting that any **attempt to force adjudication within an Article I tribunal** is an unconstitutional deprivation of **fundamental rights**.

**Case Citations:**

- **Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982)** – Bankruptcy courts cannot adjudicate private rights disputes under Article I.

- **Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665 (2015)** – Consent is required for a bankruptcy court to exercise jurisdiction over non-core matters.

## STATEMENT OF FACTS

1. **The Borrower-in-Custody (BIC) Agreement**

   The **Debtor-in-Possession** entered into an agreement with the **depository institution** under the **Borrower-in-Custody (BIC) Program**, as outlined in **Federal Reserve Operating Circular No. 10** and **Federal Reserve Operating Circular No. 7**. Under the terms of this agreement, the **depository institution was granted power of attorney** to act on behalf of the **Debtor-in-Possession,** pledging collateral to the **Federal Reserve** for **discount window lending** purposes. However, **Section 7** of **Operating Circular No. 10** improperly establishes the **depository institution** as both the **agent and the principal,** thereby violating the **fundamental principles of agency law** and **rendering the agreement unconscionable.**

2. **Unauthorized Pledging and Excess Collateralization**

   The **depository institution** did not merely pledge the collateral in accordance with the **Debtor-in-Possession's original intent,** but instead engaged in **excess collateralization,** seeking up to **900% more than the collateral's stated value.** This practice resulted in the **issuance of funds far exceeding the value of the original transaction,** creating an **unjust enrichment** for the **depository institution,** while simultaneously increasing the **Debtor-in-Possession's potential liability** without disclosure or consent.

3. **Securitization and Trading of Collateralized Assets**

   Pursuant to **Operating Circular No. 10, Appendix 3**, the **Federal Reserve authorized the depository institution** to pledge the **Debtor-in-Possession's collateral** and receive **funds from the Federal Reserve** on the borrower's behalf. However, once the funds were received, the **depository institution deposited them into the borrower's account** and then **engaged in fractional reserve banking**, wherein it further **securitized and traded the pledged collateral**. This practice effectively **converted the Debtor-in-Possession into an involuntary participant in a financial securities transaction**, without disclosure, compensation, or any lawful delegation of authority to engage in such activity.

4. **Violation of Tax and Banking Laws**

   The **depository institution** further violated **tax laws** by failing to **report capital gains and profits** derived from the **securitization and reinvestment of collateralized funds**, despite the **Internal Revenue Code's definition of gross income**, which includes "**income derived from any source whatsoever**" (**26 U.S.C. § 61(a)**). The **depository institution's actions** thus constitute **tax fraud**, as it **improperly excluded capital gains income from taxation**, resulting in both **unjust enrichment** and a **violation of federal tax law**.

5. **The Debtor-in-Possession's Status as a Business Entity**

   Pursuant to **12 U.S.C. § 414**, the **Debtor-in-Possession qualifies as a U.S. borrower** engaged in transactions under **Federal Reserve authority**, effectively operating as a **financial entity under federal law**. The **BIC program application** granted the **Debtor-in-Possession** the **capacity to borrow as an "any Federal Reserve Bank"**, demonstrating that the **borrower is not merely a consumer, but an entity engaged in financial transactions akin to a commercial enterprise**. This status further reinforces the **Debtor-in-Possession's right to assert claims regarding financial mismanagement, securities fraud, and unjust enrichment**.

U.S. Bankruptcy Court - Hawaii   #24-01025   Dkt # 40   Filed  03/17/25   Page 11 of 29

6. **The Need for Article III Adjudication**

Because these claims involve **constitutional rights, tax law violations, unjust enrichment, and agency fraud**, they are **non-core matters** requiring adjudication in an **Article III court**. The **Bankruptcy Court** lacks the **judicial power** to resolve **private rights disputes** arising under **constitutional and statutory law**, necessitating **withdrawal from the Bankruptcy Court's jurisdiction and removal to the District Court**.

**Case Citations:**

- **Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935)** – Mortgage agreements must adhere to constitutional protections.

- **Perry v. United States, 294 U.S. 330 (1935)** – Government-backed financial instruments must be honored as written.

## HISTORICAL BACKGROUND OF THE BORROWER-IN-CUSTODY PROGRAM

1. **Origins and Establishment**

The **Borrower-in-Custody (BIC) Program** was introduced by the **Federal Reserve** as a mechanism for **depository institutions to pledge loan collateral while retaining custody of the pledged assets**. This program was designed to allow **financial institutions** to access **liquidity through the Federal Reserve's discount window** while avoiding the logistical complications of **transferring loan documents to the Federal Reserve directly**. Under **Federal Reserve Operating Circular No. 10**, depository institutions were granted the **authority to act as custodians of pledged collateral**, thus creating a framework for securing **short-term liquidity loans**.

2. **Expansion and Regulatory Adjustments**

Over time, the **BIC Program** evolved to include **a broader range of financial instruments,** allowing institutions to **leverage a variety of loan portfolios** as collateral. The introduction of **Operating Circular No. 7** further expanded the program by addressing the **management of pledged collateral,** the **transfer of security interests,** and the **perfection of liens** on pledged assets. The **Federal Reserve's policies permitted financial institutions to pledge collateral on behalf of borrowers,** effectively treating **borrowers' loan portfolios as financial assets for securitization and liquidity purposes.**

3. **Delegation of Authority and Agency Conflicts**

A significant issue within the **BIC Program** is the delegation of authority established in **Operating Circular No. 10, Section 12.3,** which grants the **depository institution irrevocable power of attorney to pledge borrower assets.** This provision, in effect, allows financial institutions to **act unilaterally in pledging collateral,** thereby creating a **conflict of interest under agency law.** Additionally, **Section 7 of Operating Circular No. 10** requires authorization from the depository institution before **collateral withdrawal or modification,** which in practice converts the **depository institution from an agent into a principal,** violating **fundamental principles of agency law.**

4. **Fractional Reserve Banking and Its Impact**

The **BIC Program** has also facilitated the **use of fractional reserve banking** to generate **additional liquidity** beyond the original pledged amounts. When a depository institution **pledges borrower collateral to the Federal Reserve,** it receives a **monetary advance,** which is **deposited into the borrower's account.** However, under the **fractional reserve system,** the depository institution then uses these deposited funds to **create additional loans,** further leveraging the original collateral **multiple times over.** This practice leads to **excess**

collateralization, with borrowers being unknowingly **held liable for significantly more than the initial collateralized amount**.

5. **Legal and Constitutional Concerns**

The **structural design of the BIC Program** raises significant **constitutional and legal concerns**, particularly regarding **due process, unjust enrichment, and tax compliance**. The **delegation of power without judicial oversight**, combined with **the unilateral control over pledged assets**, creates a **legal framework that effectively deprives borrowers of their property rights** without proper **adjudication or consent**. These concerns are amplified by the **securitization and trading of pledged collateral**, which **converts borrowers into involuntary participants in financial transactions without their knowledge or compensation**.

6. **Judicial Review and the Need for Article III Oversight**

Due to the **far-reaching implications of the BIC Program**, courts have consistently ruled that **financial agreements involving property rights must adhere to constitutional protections**. In **Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935)**, the Supreme Court held that **contracts impacting mortgage security interests must comply with constitutional due process requirements**. Similarly, in **Fuentes v. Shevin, 407 U.S. 67 (1972)**, the Court reaffirmed that **borrowers must be afforded notice and an opportunity to be heard before any deprivation of their property rights occurs**. Given these precedents, the **Debtor-in-Possession asserts that the BIC Program requires judicial scrutiny by an Article III court** to ensure compliance with **constitutional due process protections**.

**Case Citations:**

- **Fuentes v. Shevin, 407 U.S. 67 (1972)** – Borrowers must receive notice and an opportunity to be heard before property deprivation.

- **Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)** – Legal proceedings affecting property rights must provide procedural due process.

## THE DEPOSITORY INSTITUTION CANNOT PLEDGE COLLATERAL AND THEN FORECLOSE ON OTHER COLLATERAL

1. **The Unconstitutionality of Dual Collateralization**

   The **depository institution**, acting under the **Borrower-in-Custody (BIC) Program**, does not have the **legal authority** to both **pledge borrower collateral** on behalf of the borrower **and then foreclose on separate collateral** to satisfy an alleged outstanding obligation. The **fundamental principle of secured transactions** under **Uniform Commercial Code (UCC) Article 9** dictates that collateral pledged for a **specific financial transaction** must **match the value of the underlying loan or credit extension**. If the **depository institution has already received funds based on the pledged collateral**, then it **cannot later claim that the borrower remains in default** while simultaneously retaining control over the **converted financial instrument**.

2. **The Legal Implications of Converting a Promissory Note into a Security**

   When a **borrower issues a promissory note**, that **instrument initially represents a promise to pay**. However, once the **depository institution pledges the promissory note as collateral**, it is **converted into a security** and no longer represents a **personal promise to pay** by the borrower. Under **UCC Article 9, Section 201, Subsection 65**, a **negotiable instrument that carries conditions and endorsements becomes an order to pay rather than a promise to pay**. This means that the **original promissory note ceases to exist in its original form** and is instead treated as a **securitized asset** under **financial regulations**. The **depository institution's attempt to claim**

foreclosure rights over additional collateral after already benefiting from the pledged collateral is therefore unlawful and unconstitutional.

3. **The Requirement for Judicial Oversight in Foreclosure Proceedings**

Because the **promissory note has been converted into pledged collateral**, there is no **remaining debt obligation that can be lawfully enforced through foreclosure**. The **only justification for foreclosure would be the existence of an ongoing promise to pay**, yet the **securitization of the pledged collateral voids the original promissory note as a legally enforceable promise**. As a result, any attempt by the **depository institution** to **unilaterally foreclose on separate collateral** constitutes a **deprivation of property without due process** and **violates the Fifth and Fourteenth Amendments**. Such **unilateral actions** by a **private financial institution** in the absence of judicial oversight amount to an **unconstitutional taking**, requiring **judicial intervention under Article III**.

4. **The Unlawful Nature of Nonjudicial Foreclosure on Securitized Instruments**

Because the **borrower's promissory note was pledged as collateral and subsequently converted into a security**, the **depository institution cannot lawfully claim that the original debt still exists**. Under **Article 9 of the UCC**, once a **financial instrument is securitized and pledged as collateral**, it is no longer **an active debt instrument in the borrower's possession**. This means that any **attempt to enforce foreclosure based on an already securitized asset must be adjudicated before a judge**, as the issue of **whether a valid debt obligation still exists** is now a **legal controversy requiring judicial resolution** under the **Seventh Amendment**.

5. **Violation of Constitutional and Commercial Law Protections**

The **depository institution's actions** in **pledging the borrower's promissory note as collateral, receiving funds from the Federal Reserve, and then pursuing foreclosure against additional collateral** violates multiple legal principles, including:

- o **UCC Article 9, Section 201, Subsection 65**, which holds that a **negotiable instrument ceases to be a promise to pay once it carries an order to pay endorsement**.

- o **The Fifth Amendment**, which prohibits **deprivation of property without due process of law**.

- o **The Fourteenth Amendment**, which requires **judicial review in cases involving property rights disputes**.

- o **The Takings Clause**, which prevents **private entities from unlawfully confiscating property without just compensation or due process**.

6. **Conclusion: The Necessity of Judicial Review**

   Because the **borrower's promissory note was converted into a pledged collateral security**, the **depository institution has already received financial compensation for the underlying debt**. Any **attempt to foreclose on additional collateral must be subject to judicial review**, as the **original obligation no longer exists in its original form**. A **nonjudicial foreclosure** would therefore be **unconstitutional and unlawful**, requiring a **formal adjudication in an Article III court** to determine the **validity of any remaining financial obligation** before property can be lawfully seized.

**Case Citations:**

- **Tyler v. Hennepin County, 598 U.S. 66 (2023)** – Property cannot be unlawfully seized without just compensation and due process.

- **Kaiser Aetna v. United States, 444 U.S. 164 (1979)** – Government and private actors cannot deprive individuals of property rights without judicial oversight.

**AFFIRMATIVE RELIEF REQUESTED**

1. **Declaration that Dual Collateralization is Unconstitutional and Unenforceable**

   The **Debtor-in-Possession** seeks a **judicial determination** that the **depository institution's practice of pledging borrower collateral while also seeking foreclosure on separate collateral is unconstitutional and unenforceable**. The **depository institution** has already **converted the borrower's promissory note into a pledged security**, thereby **extinguishing its status as a promise to pay**. Under **UCC Article 9, Section 201, Subsection 65**, once an **instrument is endorsed with an order to pay**, it **no longer represents a debt obligation** that can be enforced through foreclosure. As such, any **subsequent foreclosure action initiated by the depository institution must be declared unlawful**.

2. **Immediate Injunctive Relief to Halt Unlawful Foreclosure Proceedings**

   Because the **depository institution** has already received **financial compensation** from the **Federal Reserve under the BIC Program**, it **cannot claim an outstanding debt** against the **Debtor-in-Possession**. The **Debtor-in-Possession requests a preliminary and permanent injunction** barring the **depository institution** from proceeding with **nonjudicial foreclosure** on any property related to this dispute. Nonjudicial foreclosure is only lawful if an **enforceable debt obligation still exists**, which it **does not in this case**, as the **debt instrument has been converted into a securitized asset**.

3. **Declaratory Judgment on the Violation of Due Process Rights**

   The **Debtor-in-Possession** seeks a **declaratory judgment** affirming that the **depository institution's actions** in pledging collateral, securitizing the instrument, and then initiating **foreclosure without judicial review** constitutes a **violation of the Fifth and Fourteenth Amendments**. Because the **borrower's original promissory note no longer exists**, there is **no**

**legal basis for a foreclosure action**, and any attempt to seize property **without a proper judicial hearing** violates **due process protections**.

4. **Return of Unlawfully Securitized and Traded Collateral**

   The **Debtor-in-Possession requests a full accounting** of all **securitized assets derived from the original collateral** and the **return of any securities, profits, or financial gains** obtained through the **unjust enrichment** of the depository institution.** The depository institution must be held accountable** for improperly **profiting from securitization while still attempting to enforce a debt that no longer exists.**

5. **Judicial Determination that the BIC Program is Subject to Article III Oversight**

   Because the **Borrower-in-Custody (BIC) Program** involves the **securitization and financial trading of borrower collateral**, the **Debtor-in-Possession seeks a judicial determination** that **any disputes arising from BIC transactions must be adjudicated before an Article III court.** The **Bankruptcy Court**, as an **Article I tribunal, lacks the constitutional authority** to adjudicate **non-core matters** involving **property rights, financial securities, and constitutional violations**.

6. **Restitution and Damages for the Unlawful Conversion of Borrower Collateral**

   The **Debtor-in-Possession** seeks **monetary damages** for the **unauthorized use and conversion of pledged collateral**, including but not limited to:

   o **Loss of equity** due to the **depository institution's excessive collateralization;**

   o **Profits gained by the depository institution from the improper trading of securitized collateral;**

   o **Damages related to the borrower's inability to access or control pledged assets.**

7. **Order Mandating Full Disclosure of All BIC Transactions**

The **Debtor-in-Possession** requests a **court order requiring the depository institution** to disclose the **full scope of transactions related to the pledged collateral**, including:

- o The **total amount of funds received** from the **Federal Reserve under the BIC Program**;

- o The **identities of third parties** who have purchased or traded securities derived from the borrower's pledged collateral;

- o A **complete history of all financial gains derived from fractional reserve banking practices** related to the pledged collateral.

**Case Citations:**

- **Horne v. Dep't of Agriculture, 576 U.S. 350 (2015)** – The government and private institutions cannot seize property without providing just compensation.

- **First Nat'l Bank v. Anderson, 269 U.S. 341 (1926)** – A financial institution cannot claim continued indebtedness after having received full compensation from pledged collateral.

**WITHDRAWAL FROM THE AUTOMATIC REFERRAL**

1. **Bankruptcy Court Lacks Jurisdiction Over Non-Core Matters**

The **Debtor-in-Possession** formally moves for **withdrawal from automatic referral** to the **Bankruptcy Court,** as the issues presented in this case involve **non-core matters** that require adjudication in an **Article III court**. Under **Stern v. Marshall, 564 U.S. 462 (2011), Bankruptcy Courts lack constitutional authority** to adjudicate disputes involving **private property rights, unjust enrichment, and constitutional claims**. Because the **underlying dispute** arises from the

**depository institution's unlawful foreclosure attempts**, the case must be **withdrawn to the District Court** under **28 U.S.C. § 157(d)**.

2. **Property Rights Cannot Be Adjudicated in an Article I Tribunal**

   This dispute concerns **fundamental property rights** arising from the **depository institution's unlawful securitization of borrower collateral**. The **Seventh Amendment** guarantees the **Debtor-in-Possession the right to a jury trial**, and the **Bankruptcy Court lacks jurisdiction to conduct a jury trial without express consent**. Since the **Debtor-in-Possession has not consented to Article I jurisdiction**, the matter **must be transferred** to an **Article III tribunal** that possesses the constitutional authority to adjudicate **controversies involving property and financial securities**.

3. **Constitutional Violations Necessitate Article III Due Process Hearing**

   Because this case involves **deprivations of property without due process**, as prohibited by the **Fifth and Fourteenth Amendments**, it **raises substantial constitutional questions that cannot be resolved by the Bankruptcy Court**. The **unilateral foreclosure actions initiated by the depository institution** constitute an **unconstitutional taking**, requiring **judicial intervention by an Article III court**. Under **Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982)**, only an Article III judge can rule on matters involving constitutional **deprivations of property**.

4. **The Automatic Referral Process is Unconstitutional as Applied**

   The **automatic referral of this case to the Bankruptcy Court** under **28 U.S.C. § 157(a) is unconstitutional as applied**, as it attempts to **delegate the resolution of private rights disputes to a non-Article III court**. Because the **depository institution's actions involve complex securities transactions, financial mismanagement, and unjust enrichment**, the **Bankruptcy Court lacks the statutory and constitutional authority** to resolve these claims. The **Debtor-in-**

Possession therefore moves for **withdrawal from automatic referral** to ensure that these **constitutional issues** are properly adjudicated in a **court of competent jurisdiction**.

5. **Judicial Precedent Supports Withdrawal to District Court**

    The **Supreme Court and Circuit Courts** have consistently ruled that **non-core proceedings must be resolved by an Article III court** when they involve **substantive constitutional claims**. In **Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989)**, the Court reaffirmed that **Bankruptcy Courts lack final adjudicatory authority over private disputes** unless **explicit consent is given by all parties**. Given that the **Debtor-in-Possession does not consent to bankruptcy jurisdiction**, this case must be **withdrawn to the District Court for proper judicial review**.

6. **Request for Immediate Transfer to District Court**

    Based on the **substantial constitutional issues raised**, the **Debtor-in-Possession respectfully requests immediate withdrawal** of this case from the **Bankruptcy Court** and transfer to the **United States District Court** for **full judicial review under Article III of the Constitution**. This request is made **pursuant to 28 U.S.C. § 157(d)**, which mandates **withdrawal where significant federal questions and private rights disputes are at issue**.

**Case Citations:**

- **Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989)** – Bankruptcy courts lack final adjudication power over non-core matters without consent.

- **Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982)** – Private rights disputes must be adjudicated in an Article III court.

**DEMAND FOR FULL ACCOUNTING AND DISCLOSURE OF COLLATERAL AND ACCOUNT INFORMATION**

1. **Right to a Full and Comprehensive Accounting**

   The **Debtor-in-Possession** demands an **immediate and full accounting** of all financial transactions related to the **pledged collateral** under the **Borrower-in-Custody (BIC) Program**. Pursuant to **Uniform Commercial Code (UCC) § 9-210**, the **Debtor-in-Possession** has the **right to demand a full accounting** of all **collateral pledged, loans obtained, funds deposited, and securities issued** as a result of this financial agreement. To date, the **depository institution** has **failed to provide** a **complete and transparent financial record** of these transactions, despite the **Debtor-in-Possession's legal entitlement to this information**.

2. **Failure to Disclose Account and Collateral Information**

   The **depository institution** acted as a **custodian and agent** under the **BIC agreement**, yet has **failed to disclose** the full **accounting records associated with the pledged collateral and the Federal Reserve advances received**. Since the **Debtor-in-Possession** is the **pledgor of the collateral** and the **authorized party responsible for the borrowing transaction**, the **depository institution is obligated under UCC § 9-210 to provide a complete and comprehensive financial statement** reflecting:

   o The **total amount of pledged collateral** deposited on behalf of the **Debtor-in-Possession**.

   o The **full list of collateralized assets** pledged to the **Federal Reserve**.

   o The **exact amount borrowed from the Federal Reserve** based on the pledged collateral.

   o The **date, time, and institution in which the Federal Reserve funds were deposited**.

   o The **full accounting of any profits generated from the reinvestment or trading of pledged securities**.

3. **Demand for Identification of Hidden Accounts**

   The **Debtor-in-Possession** further demands immediate **disclosure of all financial accounts** held

in the **Debtor-in-Possession's name** but **controlled by the depository institution**. Since the **BIC agreement resulted in Federal Reserve advances being deposited into an account under the Debtor-in-Possession's name**, the **failure to disclose the existence, account number, or location of these funds constitutes financial fraud and an unlawful withholding of assets**. The **depository institution** must immediately provide:

- o The **institution name and branch location** where the Federal Reserve advances were deposited.

- o The **account number(s) associated with these funds**.

- o A **full explanation as to why the Debtor-in-Possession was never informed** of the account's existence.

- o A **detailed breakdown of any transfers, withdrawals, or investments made using these funds**.

4. **Legal Consequences of Non-Disclosure**

The **depository institution's refusal to provide this information** violates the **Debtor-in-Possession's rights under the UCC and federal financial laws**. Under **UCC § 9-210**, a secured party **must respond to an accounting request in a timely manner** and **cannot withhold critical financial information from the pledgor of collateral**. The **continued concealment** of account and collateral information may also constitute:

- o **Fraudulent misrepresentation** under **common law banking principles**.

- o **Breach of fiduciary duty**, as the **depository institution acted as an agent in managing pledged assets**.

- o **Unjust enrichment**, since the **depository institution has profited from pledged assets without informing the pledgor**.

- o **Violation of the Fifth and Fourteenth Amendments**, as the **failure to disclose this information deprives the Debtor-in-Possession of the ability to assert legal control over their own property**.

5. **Demand for Immediate Compliance**

   The **Debtor-in-Possession formally demands** that the **depository institution immediately provide all requested financial records and disclosures**. If this information is **not provided**, the **Debtor-in-Possession will seek judicial intervention to compel production** of these records under **Article III jurisdiction**. Any **further delay or refusal to comply** will be considered **an intentional obstruction of justice and a violation of financial transparency laws**.

**Case Citations:**

- **Anderson Nat'l Bank v. Luckett, 321 U.S. 233 (1944)** – Financial institutions have a duty to disclose account and fund information to rightful owners.

- **Security-First Nat'l Bank v. Cooper, 62 F.2d 871 (9th Cir. 1933)** – Banks must provide full accounting records to individuals with a legal claim to pledged assets.


**SUMMARIZATION OF DEBTOR-IN-POSSESSION'S INTENT AND PURPOSE**

1. **Assertion of Rights and Legal Standing**

   The **Debtor-in-Possession** asserts its **legal right** to seek full judicial review under **Article III of the U.S. Constitution**, as this case involves **property rights, financial mismanagement, and constitutional violations**. The **Borrower-in-Custody (BIC) Program** establishes that the

**Debtor-in-Possession is the pledgor of the collateral**, and as such, maintains **holder-in-due-course status** over the securitized instrument. The **depository institution has acted beyond its authority**, first pledging the collateral for financial gain, then **attempting foreclosure on additional collateral without legal justification**. The **Debtor-in-Possession's intent** is to ensure that these **unlawful financial practices** are properly adjudicated before a **constitutionally empowered Article III tribunal**.

2. **Challenge to the Unconstitutional Dual Collateralization**

The **Debtor-in-Possession** has demonstrated that the **depository institution** has engaged in **dual collateralization**, an **unlawful and unconstitutional financial practice**. By **pledging borrower collateral to obtain Federal Reserve funding** and then **initiating foreclosure on separate assets**, the **depository institution has exceeded its lawful authority**. Under **UCC Article 9, Section 201, Subsection 65**, once a **negotiable instrument is converted into pledged collateral or a security**, it **ceases to be a personal promise to pay**. Since the **original debt obligation has been extinguished, nonjudicial foreclosure is unconstitutional and must be voided**.

3. **Right to Full Accounting and Financial Disclosure**

The **Debtor-in-Possession demands** that the **depository institution provide an immediate and comprehensive accounting** of all **securitized assets, pledged collateral, Federal Reserve advances, and undisclosed accounts held in the Debtor-in-Possession's name**. The failure to disclose this information constitutes a **violation of UCC § 9-210**, which grants **the pledgor of collateral the right to an accounting of all financial transactions**. The **Debtor-in-Possession seeks full restitution** for **any financial gains improperly retained** by the **depository institution** through its **unlawful securities transactions and fractional reserve banking practices**.

4. **Notice of Removal to the Federal District Court Under Article III**

The **Debtor-in-Possession formally invokes its right to remove this case from the Bankruptcy**

Court, as it presents **constitutional challenges** that cannot be **adjudicated by an Article I tribunal**. Pursuant to **28 U.S.C. § 157(d)**, the **Debtor-in-Possession demands withdrawal from automatic referral to the Bankruptcy Court** and **removal to the United States District Court**, where a **constitutionally empowered judge** will have **proper jurisdiction** over these **complex financial and constitutional claims**. The **Debtor-in-Possession asserts its right** to **due process, judicial review, and a full jury trial** under the **Seventh Amendment**.

5. **The Automatic Stay Must Remain in Place**

   As this matter involves **significant legal controversies over property rights, collateralization, and financial fraud**, the **automatic stay under 11 U.S.C. § 362 must remain in effect** until these **issues are fully resolved**. No entity, including the **depository institution**, may proceed with **foreclosure actions or financial enforcement** until a **final judicial determination** has been made. Any attempt to **circumvent the automatic stay** will be considered a **willful violation of federal bankruptcy protections**.

6. **Final Demand for Verification of Debt**

   The **Debtor-in-Possession formally demands that the depository institution verify and authenticate any claim of indebtedness**. Under the **Fair Debt Collection Practices Act (FDCPA) and due process protections**, any claim of **indebtedness must be substantiated with verifiable proof**. A **courtesy acceptance of a proof-of-claim form is insufficient**—the **depository institution must provide actual proof** that a **valid, outstanding debt still exists**, despite the **conversion of the original promissory note into a pledged security**. If the **depository institution fails to provide such proof**, then all **foreclosure proceedings and financial claims must be dismissed as fraudulent**.

7. **Invocation of Constitutional Protections Against Nonjudicial Proceedings**

   Because the **claims presented in this petition exceed $20 in value** and involve **controversies**

over property rights, the **Debtor-in-Possession formally invokes the protections of the Seventh Amendment**. Under the **U.S. Constitution, all controversies exceeding $20 require judicial resolution in an Article III court**. The **Debtor-in-Possession asserts that all disputes regarding collateral, securities, and financial transactions must be adjudicated before a constitutionally empowered judge**. Any **attempt to continue foreclosure proceedings outside of a judicial forum** is **unconstitutional, unlawful, and must be immediately enjoined.**

Case Citations:

- **McCulloch v. Maryland, 17 U.S. 316 (1819)** – Banks are subject to constitutional financial regulations and cannot operate beyond their legal authority.

- **Horne v. Dep't of Agriculture, 576 U.S. 350 (2015)** – Property cannot be seized without due process and just compensation.

## CERTIFICATION, VERIFICATION, AND VALIDATION

I, **RONNIE LOUIS MARVEL KAHAPEA**, the undersigned **Debtor-in-Possession**, do hereby **certify, verify, and validate** that the foregoing **Petition for Redress of Grievances** is **wholly accurate**, based on **first-hand knowledge, legal standing, and documented fact**, as witnessed by and before **God**. I further attest that the **statements, declarations, and demands** contained within this petition are **true, correct** to the **best of my knowledge and ability**, and that the **facts herein presented** are presented in **good faith** in pursuit of **lawful remedy** under **constitutionally secured and commercial law principles**.

Executed this **5th day of March, 2025**, as an **Affidavit of Fact**, with **full reservation and retention of all rights**.

**By:** ~~_[signature]_~~

**RONNIE LOUIS MARVEL KAHAPEA** Debtor-in-Possession
P.O. Box 875
Volcano, HI 96785

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**NOTARY NOTICE:** Notaries, in reference to this Document, are Prohibited from: Giving Legal Advice, analyzing, critiquing, offering an opinion, making a legal determination or Altering anything, in whole or in part, within the above document. Liability may incur Bond Damages for Trespass and/or harm upon a private Man.

---

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# JURAT

### NOTARY CERTIFICATION

**STATE OF** HAWAII
**COUNTY OF** HAWAII

On 03/05/2025 before me __**Donna Nichols**__ Notary Public, personally stood **Ronnie Louis Marvel Kahapea**, a natural man, who proved to me on the basis of satisfactory evidence to be the living soul whose name is subscribed to the within instrument described/ Titled: __Debtor- in- possession's Petition for withdrawal fm Automatic Referral__ of the 3rd Circuit, with 28 pages, dated 03/05/2025, acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument pursuant to Chapter 456, Hawaii Revised Statutes and Hawaii Administration Rules § 5-11-8.

My commission will expire __4|18|2025__

**I certify under PENALTY OF PERJURY under the laws of the State of Hawaii that the foregoing paragraph is true and correct.**

Witness my hand and the official seal of my office.

Signature _Donna Nichols_                     **SEAL**

DONNA NICHOLS
NOTARY
PUBLIC
Comm. No.
2*-37
STATE OF HAWAII